**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF SOUTH CAROLINA**

| | |
|---|---|
| In re:<br><br>Regional Ambulance Service, Inc.,[1]<br><br>　　　　　Debtor. | Chapter 11<br><br>Case No. 19-06574-hb |

**DEBTOR'S MOTION FOR INTERIM AND FINAL ORDERS UNDER
BANKRUPTCY CODE SECTIONS 105(a), 363(b), 363(c), 507(a), AND 541
(A) AUTHORIZING PAYMENT OF CERTAIN PRE-PETITION WAGES, SALARIES,
EMPLOYEE EXPENSES, AND OTHER EMPLOYEE BENEFITS AND PAYMENT OF
RELATED TAXES AND WITHHOLDINGS, (B) AUTHORIZING CONTINUATION OF
EMPLOYEE BENEFIT PROGRAMS, AND (C) AUTHORIZING FINANCIAL
INSTITUTIONS TO HONOR ALL CHECKS PRESENTED
FOR PAYMENT RELATED TO THE FOREGOING**

Regional Ambulance Service, Inc. (the "Debtor" or "Company"), the above-captioned debtor and debtor-in-possession hereby moves for entry of interim and final orders, under sections 105(a), 363(b), 363(c), 507(a), 541, 1107(a) and 1108 of Title 11 of the United States Code (the "Bankruptcy Code") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"): (a) authorizing payment of certain pre-petition wages, salaries, employee expenses, and other employee benefits and payment of related taxes and withholdings, (collectively, and as further described below, the "Pre-Petition Employee Obligations"); (b) authorizing continuation of employee benefits programs (collectively, and as further described below, the "Employee Benefit Programs"); and (c) authorizing financial institutions to honor all checks presented for payment related to the foregoing (the "Motion"). In support of this Motion, the Debtor respectfully represents as follows:

---

[1] The last four digits of the Debtor's tax identification number are 4015.  The address of the Debtor's corporate headquarters is 1089 Augusta Rd., Suite 300, Warrenville, SC 29851.

**JURISDICTION**

1. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334(b)(2)(A). The Debtor confirms its consent, pursuant to Rule 7008 of the Bankruptcy Rules, to the entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

2. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. The predicates for the relief requested herein are Bankruptcy Code sections 105(a), 363(b), 363(c), 507(a), 541, 1107(a), and 1108 and Bankruptcy Rules 6003 and 6004.

**PROCEDURAL HISTORY**

4. On the date hereof (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor employs approximately 100 individuals in order to provide 24 hour ambulance services for clients throughout Richland County and Aiken County in South Carolina.

5. The Debtor continues to manage and operate its business as debtor in possession pursuant to Bankruptcy Code sections 1107 and 1108. No trustee or examiner has been requested in this Chapter 11 case, and no committees have been appointed.

**RELIEF REQUESTED**

6. By this Motion, the Debtor seeks entry of an order authorizing it, in its discretion, to pay, continue or otherwise honor all Pre-Petition Employee Obligations to or for the benefit of all current and former Employees, including, but not limited to, all unpaid compensation, paid time off, deductions, payroll taxes, reimbursable expenses, the costs associated with the employee benefit programs, including all premiums, and all administrative and third-party costs associated with the foregoing.

7. The Debtor also seeks authority to continue its Employee Benefit Programs in the ordinary course of business and to pay all associated administrative and third-party costs. The Debtor further seeks an order directing its banks to honor pre-petition payments, including checks, issued on account of Pre-Petition Employee Obligations, Employee Benefit Programs, and workers' compensation insurance.

I.  **THE EMPLOYEE WAGE AND BENEFIT OBLIGATIONS**

A.  **Debtor's Employees**

8. As of the Petition Date, the Debtor has approximately 100 employees (the "Employees").

9. The Employees perform a variety of critical functions, including marketing, customer service, information technology, dispatch, emergency medical technical service, logistics, maintenance, drivers, administrative, accounting, finance, management, and similar tasks. The skills and experience of the Employees, as well as their relationships with customers and vendors and knowledge of the Debtor's business are essential to the Debtor's ongoing operations and ability to preserve the revenue necessary for reorganization.

B.  **Employee Compensation**

10. In the ordinary course of business, all Employees are paid bi-weekly. The Debtor's payroll is administered through ADP, a third-party service provider. The Employees receive their pay through checks, which are administered through ADP. The last payroll was made in the ordinary course of business on December 9, 2019 prior to filing and covered wages for time worked through December 1, 2019. The next scheduled pay date in the ordinary course of business is December 23, 2019, and will include wages for time worked from December 2, 2019 through December 15, 2019. At the Petition, the Debtor estimates that employees had accrued wages in the aggregate of approximately $76,811.01, as shown on the **Exhibit A**

3

attached hereto, for time worked from December 15, 2019 through the Petition Date. **Exhibit A** includes a breakdown by an employee identifier as opposed to by name for confidentiality purposes. Upon request, the Debtor will provide a copy of this exhibit including employee names to Court or the Office of the United State Trustee.

11. The Debtor believes that it is current, as of the Petition Date, on all payrolls that have been earned by the Employees.

12. The Debtor estimates that it will owe certain amounts to ADP for services relating to payroll processing. ADP is crucial in providing the Debtor with a payroll system that functions seamlessly. The Debtor typically pays ADP approximately $13,000.00 per year. The Debtor seeks authority to pay any amount due to ADP to ensure there is no disruption to the Debtor's payroll system.

**C.    Time Off Benefits, Including PTO**

13. The Debtor offers several paid ("PTO") and unpaid time-off benefits for all Employees, including vacation time, sick leave, holidays, and other paid leave (collectively, "Time Off Policies").

14. Commencing with their start date, Employees are entitled, on a calendar year basis, to either five (5) or fourteen (14) days for which they can use as sick and/or personal days ("Sick/Personal Days Off"), depending on the amount of time the Employee has worked for the Company. Employees accrue two (2) Sick/Personal Days Off after one year, and accrue a total and maximum amount of three (3) Sick/Personal Days Off days after six years of work.

15. The amount of allowed vacation days ("Vacation Days") for each Employee is also based on the Employee's length of employment. Employees accrue Vacation Days according to the number of years worked. Newly hired employees begin to accrue Vacation after one year. One (1) to five (5) years of service yields two (2) sick days off and five (5) vacation

days off.  Six (6) to ten (10) years of service yields three (3) sick days off and seven (7) vacation days off.  After eleven (11) years of service employees yield six (6) sick days off and fourteen (14) vacation days off.

16.  Vacation Days that have not been used by the end of the year do not carry forward to the following year.  Any Vacation Days that are unused by the end of the year are forfeited.

17.  In addition to PTO, the Debtor offers its office staff (dispatch, billing) ten fixed paid holidays throughout the year (collectively, the "Holidays").  Generally, Employees are not required to work on a designated Holiday but are paid at their regular base rate of pay.

18.  The Debtor estimates that as of the Petition Date, Employees have accrued approximately $15,243.50 in PTO liabilities and on account of other time off policies.  The Debtor seeks authority to honor its obligations for PTO and other time off policies in the ordinary course of business but *not* to pay any amounts on account of PTO and time off policies outside of the ordinary course except as mandated under state law.

D.  **Deductions, Withholdings and Payroll Taxes**

19.  For each applicable pay period, the Debtor, through ADP, routinely deducts certain amounts from each Employee's gross payroll, including, without limitation, garnishments, child support, spousal support, and similar deductions and other pre- and after-tax deductions (collectively, the "Deductions").  During the pay periods discussed above, on average, the Debtor deducts, on an aggregate basis, the approximate amount of $4,052.22 from paychecks of Employees.

20.  In addition to the Deductions, federal and state law requires the Debtor to withhold amounts related to federal, state and local income taxes, Social Security, and Medicare taxes for remittance to the appropriate federal, state or local taxing authority (collectively, the "Withheld Amounts").  In addition, the Debtor must match from its own funds for Social

5

Security and Medicare taxes and pay, based on a percentage of gross payroll, additional amounts for federal and state unemployment insurance (collectively, the "Employer Payroll Taxes" and, together with the Withheld Amounts, the "Payroll Taxes"). In the aggregate, the Payroll Taxes, including both the Employees' and Debtor's portions, total, on average, approximately $14,502.56 per each pay period as discussed above.

21. To the extent any of the Deductions or Payroll Taxes may not have been forwarded to the appropriate third-party recipients, the Debtor seeks authority to pay or transfer pre-petition Deductions and Payroll Taxes (and to continue to forward Deductions and Payroll Taxes on a post-petition basis whether or not related to the pre-petition period) to the applicable third-party recipients in the ordinary course of business and consistent with past practice.

E.     **Reimbursable Expenses**

22. Prior to the Petition Date, the Debtor routinely reimbursed Employees for ordinary and necessary business-related expenses incurred on behalf of the Debtor in the scope of their employment (collectively, the "Reimbursable Expenses"). The Reimbursable Expenses are incurred in the ordinary course of the Debtor's business operations and limited to the following: automobile mileage, cell phone expenses, and other minor business-related expenses. The Reimbursable Expenses are submitted, processed and reimbursed internally.

23. Requests for reimbursement of automobile mileage are typically submitted immediately after "running an errand" for the business. Once approved, Reimbursable Expenses are paid by check. As of the Petition Date, the Debtor believes it is current on all Reimbursable Expenses.

F.     **Workers' Compensation Insurance**

24. The Debtor is required by state law to maintain workers' compensation insurance for their Employees for claims arising from or related to employment by the Debtor. The Debtor

6

provides this coverage (the "Workers' Compensation Insurance") through insurance policies. Under the Debtor's current Workers' Compensation Insurance, workers' compensation claims are administered and paid by Amerisure up to statutory limits for workers compensation and Employer liability limits of $1 million. The policies are "guaranteed cost" policies and, therefore, do not have a deductible. The coverage period under the current Policy runs from 7/18/19 through 7/18/20. The annual premium for the Policy totals approximately $134,720.00.

25. The Debtor seeks authority to continue to administer its Workers' Compensation Insurance.

**G.    Honoring Pre-Petition Checks and Payments**

26. Before the Petition Date, the Debtor paid certain of its Pre-Petition Employee Obligations with checks that may not have been presented for payment as of the Petition Date. To ensure the orderly payment of the Pre-Petition Employee Obligations, the Debtor requests that the Court enter an order requiring the Debtor's banks and ADP to honor any such checks which are drawn on the Debtor's accounts, and authorizing the banks to rely on the representations of the Debtor as to which checks are subject to this Motion. To the extent any such checks nevertheless are dishonored, the Debtor additionally requests authority to issue replacement checks and to reimburse its Employees for any damages resulting therefrom.

**II.    NEED FOR RELIEF**

27. It is essential that the Debtor be permitted (to the extent funds are available, but not obligated) to pay to, on behalf of all Employees the amounts set forth above. It is equally as important to provide the benefits described above to the Employees in the ordinary course of business.

### III. APPLICABLE AUTHORITY

28. This Court has routinely approved the payment of prepetition employees claims for wages, salaries, and benefits on the grounds that the payment of such claims was necessary to effectuate a successful reorganization. *See, e.g., In re Café Holdings Corp., et al.,* Case No. 18-05837) (Bankr. D.S.C. Nov. 20, 2018); *In re Merit Group Inc., et al.,* Case No. 11-03216 (HB) (Bankr. D.S.C. May 19, 2011); *In re BI-LO, LLC,* Case No. 09-02140 (HB) (Bankr. D.S.C. March 24, 2009); *In re Georgetown Steel Company, LLC,* Case No. 03-13156 (JW) (Bankr. D.S.C. Oct. 23 2003).

**A.    Payment of the Pre-Petition Employee Obligations Should Be Authorized Under Bankruptcy Code Section 507(a).**

29. Bankruptcy Code sections 507(a)(4) and 507(a)(5) require that certain claims for pre-petition wages, salaries, commissions, vacation, sick and other leave policies, and employee benefit contributions be accorded priority in payment in an amount not to exceed $12,850.00 for each individual. The Debtor believes that it is current on all wage and salary payments owed to employees, and any outstanding payments for commission, vacation, sick and other leave policies, and employee benefit contributions are owed in amounts under the $12,850.00 cap of Bankruptcy sections 507(a)(4) and 507(a)(5), to the extent such caps are applicable. Accordingly, granting the relief requested will not adversely affect the Debtor's other unsecured creditors. To the extent that Employees are owed aggregate amounts in excess of these caps (for items other than base salary), the Debtor submits that payment of the Pre-Petition Employee Obligations in such higher amounts or otherwise non-priority amounts is nonetheless justified in this case, as the Debtor's Employees are extremely important in maintaining the current value of the Debtor's estate.

30. Additionally, the Debtor believes that all Pre-Petition Employee Obligations that exceed the priority cap or are otherwise non-priority have arisen in the ordinary course of the business of the Debtor and are reasonable in relation to the value of the services rendered.

B. **The Proposed Payments Are Appropriate Under Bankruptcy Code Section 363.**

31. Under Bankruptcy Code section 363, a bankruptcy court is empowered to authorize a chapter 11 debtor to expend funds in the bankruptcy court's discretion outside the ordinary course of business. *See* 11 U.S.C. § 363. In order to obtain approval for the use of estate assets outside the ordinary course of business, the debtor must articulate a valid business justification for the requested use. *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989). To the extent the payment of pre-petition wage, salary and benefit claims are deemed to be outside the ordinary course of business, the preservation and protection of a debtor's business, the retention of a debtor's currently working employees and the maintenance of positive employee morale provide a sufficient business justification for such payment. *See id*.

32. As described herein, the Employees are essential to the continued operation of the Debtor's business. The Debtor believes its ability to reorganize will be materially impaired by any workforce instability or attrition at this critical juncture. The relief requested in this Motion is, therefore, a necessary and critical element of the Debtor's efforts to preserve value for its stakeholders and is therefore appropriate under Bankruptcy Code section 363.

C. **Payment of Certain of the Pre-Petition Employee Obligations is Appropriate Under Bankruptcy Code Section 541.**

33. Payment of the Employee Deductions will not prejudice the Debtor's estate because such withholdings are derived from Employee funds and held in trust for the benefit of the related payees and, thus, do not constitute property of the Debtor's estate under Bankruptcy Code section 541. *See Begier v. IRS*, 496 U.S. 53, 58-59 (1990). *See also In re Columbia Gas*

9

*Sys., Inc.*, 997 F.2d 1039, 1059 (3d Cir. 1993) (concluding that property which debtor holds in trust – either express or constructive – for another does not become property of the estate when the debtor files for bankruptcy, and stating that "Congress clearly intended the exclusion by section 541(d) to include not only funds held in express trust, but also funds held in constructive trust."); *EBS Pension L.L.C. v. Edison Bros. Stores, Inc. (In re Edison Bros., Inc.)*, 243 B.R. 231 (Bankr. D. Del. 2000) (same). Moreover, payments which are critical to the retention and morale of the Debtor's workforce actually add value to the estate because an unplanned reduction in Employee retention or productivity could have disastrous effects on the Debtor's business operations.

**D.    Payment of the Pre-Petition Employee Obligations is Authorized under Bankruptcy Code Sections 1107(a) and 1108.**

34.    The Debtor, operating its business as debtor in possession under Bankruptcy Code sections 1107(a) and 1108, is a fiduciary "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners." *In re CoServ, L.L.C.*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). Implicit in the duties of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id*.

35.    According to the *CoServ* court, there are instances in which a debtor in possession can fulfill its fiduciary duty "only … by the preplan satisfaction of a pre-petition claim." *See id*. The *CoServ* court specifically noted that preplan satisfaction of pre-petition claims would be a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id*. The court provided a three-pronged test for determining whether a preplan payment on account of a pre-petition claim was a valid exercise of a debtor's fiduciary duty:

10

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's pre-petition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id*. at 498.

36. Payment of the Pre-Petition Employee Obligations meets each element of the *CoServ* court's standard. Any failure by the Debtor to pay the Pre-Petition Employee Obligations would have a severe negative impact on the morale of the Debtor's Employees at a critical time for the Debtor and its business. Moreover, as described above, the Employees likely maintain priority claims against the Debtor for the vast majority, if not all, of the Pre-Petition Employee Obligations.

37. Second, the potential harm and economic disadvantage that would stem from the failure to pay the Pre-Petition Employee Obligations is grossly disproportionate to the amount of any pre-petition claim that may be paid. Absent payment of the Pre-Petition Employee Obligations, Employee morale would decrease dramatically, likely leading to the loss of key Employees, lower sales, and other severe business disruptions costing far in excess of the amount of such obligations.

38. Third, there is no practicable alternative to the payment of the pre-petition Employee Obligations or continuation of the Employee Benefit Programs. Unpaid Employees who can seek alternative employment will do so, causing significant disruption of the Debtor's business and forcing the Debtor to incur unnecessary costs and challenges in finding and hiring new employees to replace them. Failure to continue the Employee Benefit Programs will require either that the Debtor either undertake the effort to replace these programs at the outset of the

bankruptcy case or deny the Employees the benefits on which they rely, which will have largely the same effect as failing to pay those Employees.

39. Therefore, the Debtor can only meet their fiduciary duties as debtor in possession under Bankruptcy Code sections 1107(a) and 1108 by payment of the Pre-Petition Employee Obligations.

E. **Bankruptcy Code Section 105 and the Doctrine of Necessity Support Payment Of the Pre-Petition Employee Obligations.**

40. Additionally, the Debtor's proposed payment of the Employee Obligations should be authorized under Bankruptcy Code section 105(a) and the "doctrine of necessity." *See In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992). Under Bankruptcy Code section 105, this Court "may issue any order . . . that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105.

41. The doctrine of necessity is a well-settled doctrine that permits a bankruptcy court to authorize payment of certain pre-petition claims prior to the completion of the chapter 11 case where the payment of such claims is necessary to the chapter 11 efforts. *See In re Just for Feet, Inc.*, 242 B.R. 821, 826 (D. Del. 1999) (stating that where the debtor "cannot survive" absent payment of certain pre-petition claims, the doctrine of necessity should be invoked to permit payment);[2] *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-192 (Bankr. D. Del. 1994) (noting

---

[2] The Court's power to utilize the doctrine of necessity in chapter 11 cases derives from the Court's inherent equity powers and its statutory authority to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The United States Supreme Court first articulated the doctrine of necessity over a century ago, in *Miltenberger v. Logansport, C. & S.W. R. Co.*, 106 U.S. 286 (1882), in affirming the authorization by the lower court of the use of receivership funds to pay pre-receivership debts owed to employees, vendors and suppliers, among others, when such payments were necessary to preserve the receivership property and the integrity of the business in receivership. *See id.* at 309-14. The modern application of the doctrine of necessity is largely unchanged from the Court's reasoning in *Miltenberger*. *See In re Lehigh & New Eng. Ry.*, 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the [debtor's] continued operation … in serious jeopardy").

that debtors may pay pre-petition claims that are essential to continued operation of business) (citing *In re Lehigh & New England Ry. Co.*, 657 F.2d at 581).

42. The doctrine of necessity is a widely accepted component of modern bankruptcy jurisprudence. *See Just For Feet*, 242 B.R. at 826 (approving payment of key inventory suppliers' pre-petition claims when such suppliers could destroy debtor's business by refusing to deliver new inventory on eve of debtor's key sales season); *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989) (recognizing that the doctrine of necessity is derived from the court's equitable powers and allows debtors to make payment on pre-petition claims to creditors who will refuse to supply services or material essential to the conduct of the debtor's business).

43. For the reasons discussed herein, it is evident that payment of the Pre-Petition Employee Obligations is necessary to the Debtor's effective chapter 11 process. In particular, without payment of the Pre-Petition Employee Obligations, the Debtor's business and operations will be detrimentally impacted through the reduction in Employee morale and the potential loss of key Employees during a critical time for the Debtor and its business. Hence, this Court should exercise its equitable powers to grant the relief requested in this Motion.

F. **Cause Exists to Authorize the Debtor's Financial Institutions and ADP to Honor Checks and Electronic Fund Transfers.**

44. The Debtor has sufficient funds on hand to pay the amounts described herein in the ordinary course of business. Also, under the Debtor's existing cash management system, the Debtor can readily identify checks relating to an authorized payment on account of Employee Obligations. Accordingly, the Debtor believes that checks or wire transfer requests, other than those relating to authorized payments, will not be honored inadvertently and that the Court should authorize and direct all applicable financial institutions and ADP, when requested by the

Debtor, to receive, process, honor and pay any and all checks or wire transfer requests in respect of the relief requested herein.

### G. **Bankruptcy Rule 6003 Has Been Satisfied and Bankruptcy Rule 6004 Should Be Waived.**

45. Certain aspects of the relief requested herein are subject to Bankruptcy Rule 6003. Pursuant to Bankruptcy Rule 6003, a court may grant such relief on an expedited basis if it is necessary to avoid immediate and irreparable harm. The Debtor submits that facts set forth herein demonstrate that the relief requested is necessary to avoid immediate and irreparable harm to the Debtor and, thus, Bankruptcy Rule 6003 has been satisfied.

46. Additionally, with respect to any aspect of the relief sought herein constitutes a use of property under Bankruptcy Code section 363(b), the Debtor seeks a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h). As described above, the relief that the Debtor seeks in this Motion is immediately necessary in order for the Debtor to be able to continue to operate its business and preserve the value of its estate. The Debtor thus submits that the requested waiver of the fourteen-day stay imposed by Bankruptcy Rule 6004(h) is appropriate.

## RESERVATION OF RIGHTS

47. Nothing contained herein is intended to be or shall be construed as (a) an admission as to the validity or priority of any lien or claim against the Debtor, (b) a waiver of the Debtor's or any appropriate party-in-interest's rights to dispute any lien or claim, or (c) an approval or assumption of any agreement, contract, program or policy under section 365 of the Bankruptcy Code. If the Court grants the relief requested herein, any payment made pursuant to the Court's order is not intended to be, and should not be construed as, an admission of the validity of any claim or a waiver of the Debtor's rights to dispute such claim subsequently.

## NOTICE

48. Notice of this Motion will be given to: (a) the Office of the United States Trustee for the District of South Carolina; (b) the parties included on the Debtor's list of twenty (20) largest unsecured creditors; (c) the Internal Revenue Service; (d) the South Carolina Department of Revenue; (e) ADP; and (f) Wells Fargo.

## NO PREVIOUS REQUEST

49. No previous request for the relief sought herein has been made by the Debtor in this or any other court.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an interim order, substantially in the form filed simultaneously with this Motion, granting the relief requested in the Motion on an interim basis and scheduling a hearing to consider the relief requested herein on a final basis and such other and further relief as may be just and proper.

December 16, 2019                               **McCARTHY, REYNOLDS, & PENN, LLC**

/s/W. Harrison Penn
G. William McCarthy, Jr. (2762)
Daniel J. Reynolds, Jr. (9232)
W. Harrison Penn (11164)
1517 Laurel St.
Columbia, SC 29201
Tel: (803) 771-8836
Fax: (803) 753-6960
Email: hpenn@mccarthy-lawfirm.com

*Proposed Counsel to the Debtor and
Debtor in Possession*